**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

_____

UNITED STATES OF AMERICA,

           Plaintiff,

  v.                                                                Case No. 07-CR-181

JANSON JOHNSON and
AMITA COUCH,

           Defendants.

_____

## ORDER

On July 10, 2007, a grand jury sitting in the Eastern District of Wisconsin returned a four-count indictment against nine defendants. At count one, defendants Hiram Smith, Janson Johnson, Demetrius Gaynor, William Turner, Brandon Bennett, Dejuan Curry, and Bernell Marshall were charged with knowingly and intentionally conspiring to distribute controlled substances in violation of 21 U.S.C. §§ 841 and 846 and 18 U.S.C. § 2. At count two, Smith and Johnson were charged with knowingly discharging a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924. At count three, Thomas was charged with providing a firearm to Kenyounta Harvester, knowing or having reasonable cause to believe that he had previously been convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. § 922. Finally, at count four, Couch was charged with harboring and concealing Harvester so as to prevent his discovery and arrest, in violation of 18 U.S.C. § 1071. Pursuant to a pretrial scheduling order, defendants Johnson and Couch timely filed pretrial motions. (*See* Docket #s 94-97.)

On November 19, 2007, Magistrate Judge Aaron Goodstein issued a recommendation and order that: Johnson's and Couch's motions for disclosure be denied; that Couch's motion to sever be denied; and that Couch's motion to suppress statements be granted. The government filed an objection to the magistrate's recommendation that Couch's motion to suppress statements be granted, and Couch, through her attorney, has filed a response.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(B), a magistrate judge may consider dispositive motions, such as motions to suppress, and issue recommendations to the district judge regarding the motions. *See id.* When a party objects to a magistrate's findings, the district court judge must make de novo determinations as to these findings. *See id.* § 636(b)(1)(C); *see also Delgado v. Bowen*, 782 F.2d 79 (7th Cir. 1986). The district court may adopt the recommendation in part or in its entirety and has the final authority of judgment in the case. *Delgado*, 782 F.2d at 82.

Neither the government nor the defense objected to the magistrate's adjudication of Janson's disclosure motion or Couch's severance and disclosure motion, and the court will adopt the recommendation in its entirety in relation to these motions. However, for the reasons set forth below, the court will overrule the magistrate's recommendation as to Couch's suppress motion and deny Couch's motion to suppress statements.

## BACKGROUND

An evidentiary hearing on this matter was conducted before Magistrate Goodstein on November 15, 2007. One witness testified for the government, Detective Herb Glidewell of the Milwaukee Police Department. The following represents a brief summary of his November 15, 2007 testimony.

Glidewell testified that he has been employed by the Milwaukee Police Department for over ten years. Currently, he is assigned to the HIDTA (High Intensity Drug Trafficking Areas) drug gang task force. In March 2006, Glidewell was investigating the Kenyounta Harvester drug trafficking organization. Mr. Harvester's drug organization had been under investigation for approximately two years at that point, and Mr. Harvester was considered one of the task force's top targets.

On March 17, 2006, Glidewell had information that Mr. Harvester may be at the Park Manor Hotel on 7730 West Appleton Avenue in Milwaukee, Wisconsin. When Glidewell went to the Park Manor Hotel, he was accompanied by at least six to eight U.S. Marshals, as Mr. Harvester was wanted on a warrant and the federal marshals had been actively looking for him. At approximately 4:00 p.m. on March 17, 2006, Glidewell and the other law enforcement officers arrived at the hotel and proceeded to room number 7, the room in which they believed Mr. Harvester to be. Glidewell said that the marshals were positioned in front, closest to the door, and he was right behind them, near the door. No officer was in uniform, but all of them had bullet-proof vests marked "POLICE." All of the officers had their badges displayed,

and Glidewell believed that everyone, including himself, had their weapons drawn. Before the officers opened the door, Mr. Harvester came outside with his hands up. Mr. Harvester was taken into custody and the officers then entered the room.

After Glidewell and the other officers entered the room, he saw the defendant, Couch, seated on the bed in the hotel room. Glidewell did not restrain her, but he began asking her questions almost immediately. Glidewell could not precisely recall the questions he asked her, but he testified he inquired about whether or not she rented the room, and the length of time she had been there. Glidewell recalled that after Harvester's arrest, no weapons were drawn.

Glidewell also began asking Couch about Mr. Harvester. Glidewell asked Couch if she was aware that Harvester was wanted; she replied that she was aware of that. Glidewell then asked why she did not turn him in, and her response was something to the effect of "why would she do that; she didn't need his money." When Glidewell told her she could get in trouble for concealing Harvester, she responded that she did not care because she would probably just get probation.

On cross-examination, Glidewell testified that the warrant for Harvester had been issued approximately two weeks prior to his arrest. He stated that when the officers arrived at the hotel, they stopped in the general office to check which room he was in, and hotel records indicated that he was in room 7, which had been registered to Couch. The officers did not check for any warrants on Couch at that time, and immediately proceeded to room 7. Glidewell further testified that the room was very small, approximately 12 feet by 12 feet.

-4-

Case 2:07-cr-00181-JPS    Filed 01/28/08    Page 4 of 13    Document 127

Glidewell was the only officer that asked Couch questions. He said that at the point they entered the room, they had no idea who she was and did know if she had any involvement with the drug conspiracy. Glidewell said the conversation with her lasted approximately one to two minutes. He stated that she was not restrained in any way, but he personally believed that she was not free to leave at that point. During this brief period of time, the marshals ran a check on Couch and discovered she was wanted on unrelated but open warrants.

## ANALYSIS

In *Miranda v. Arizona,* 384 U.S. 436 (1966)*,* the Supreme Court held that the government may not "use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444. Despite this seemingly broad protection, a defendant must be both "interrogated" and "in custody" to trigger her *Miranda* rights. *United States v. Saadeh*, 61 F.3d 510, 519 (7th Cir.), cert. denied, 516 U.S. 990 (1995).

The Supreme Court has defined "interrogation" as "questioning initiated by law enforcement officers." *Miranda*, 384 U.S. at 444. This definition was later broadened by the Court to include not only express questioning, but also words or actions on behalf of law enforcement that are "likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis,* 446 U.S. 291, 301 (1980). Here, it is clear that Couch was "interrogated" as she was directly questioned by Glidewell;

-5-

neither party disputes this nor objected to Magistrate Goodstein's finding that Couch was interrogated as defined by *Miranda*.

An individual is considered to be "in custody" for *Miranda* purposes when a reasonable person in her situation would have believed that she was not free to leave or terminate the conversation. *United States v. Thompson*, 496 F.3d 807, 810 (7th Cir. 2007). This is an objective test and requires an assessment of the totality of the circumstances. *See Beckwith v. United States*, 425 U.S. 341, 341-48 (1976). "Custody 'implies a situation in which the suspect knows he is speaking with a government agent and does not feel free to end the conversation; the essential element of a custodial interrogation is coercion.'" *United States v. Salyers*, 160 F.3d 1152, 1159 (7th Cir. 1998) (quoting *United States v. Martin*, 63 F.3d 1422, 1429 (7th Cir. 1995)).

Magistrate Goodstein applied the facts of Couch's case to three other cases: *United States v. Burns*, 37 F.3d. 276 (7th Cir. 1994); *United States v. Saadeh,* 61 F.3d 510 (7th Cir. 1995); and *United States v. Mullikin*, 2006 WL 1675185 (E.D. Ky. 2006). In each of these cases, the respective courts found that the defendant was *not* in custody and, therefore, not entitled to receive the *Miranda* warnings.

The cases cited by Magistrate Goodstein contain similar factual patterns and provide compelling analysis applicable to Couch. For example, in *Burns*, the defendant moved to suppress statements she made during the execution of a search warrant of her hotel room. *Burns*, 37 F.3d at 278. She requested to leave her room numerous times, but officers informed her that she could not leave and continued to

search the room. *Id.* While the officers searched, they asked her what she was doing in Milwaukee; to which she responded she was visiting friends. *Id.* Within minutes of the search execution, the officers found one kilogram of cocaine in a dresser drawer. *Id.* She responded to the officer's discovery of the cocaine and subsequent questioning by stating, "that [sic] not mine, I don't know what it is." *Id.* During the execution of the search warrant, Burns was asked to leave the hotel room a number of times. The officers told her that she had to stay on the bed until the search was completed. Burns was not read *Miranda* warnings prior to her formal arrest. *Id.* The Seventh Circuit affirmed the denial of her suppression motion, noting that Burns was not in custody during the questioning and search of her hotel room, and, therefore, not entitled to *Miranda* warnings. Specifically, the Seventh Circuit noted that Burns was detained "for less than ten minutes prior to her arrest. She was not handcuffed or physically restrained in any way until she was formally placed under arrest. Only two law enforcement officers conducted the search, and they did not brandish weapons. Finally, the officer's questioning was limited in scope and duration." *Id.* at 281.

Magistrate Goodstein also cited the *Saadeh* case to illustrate custodial status and *Miranda* rights. In this case, defendant Imad Saadeh worked at an automobile shop that became the target of an investigation for a cocaine distribution ring. *Saadeh*, 61 F.3d at 514. Agents conducted a search of the automobile shop and found several items of evidentiary value. During the execution of the search warrant, Saadeh was questioned if a certain toolbox was his and he responded affirmatively.

*Id.* Using keys the officers previously confiscated from Saadeh, they opened the tool box and found bundles of currency totaling $35,000.00. *Id.* at 516. Saadeh moved to suppress the statements he made to the officers that the toolbox was his. In affirming the district court's denial of his suppression motion, the Seventh Circuit stated that:

> Saadeh was not detained for an unreasonably long period of time prior to his eventual arrest. The officers did not handcuff or physically restrain him in any way until they formally placed him under arrest. The verbal exchange between him and the officer took place shortly after their entry. At the time he was questioned, Saadeh had been treated no differently from other building occupants, all but two of whom were ultimately released and not prosecuted. As Saadeh stipulated, he was not under arrest. Moreover, Saadeh was not the isolated target of any directed questioning; in fact, the officer who asked the question did not even know Saadeh's identity at the time he posed the question. Finally, the officer's questioning was limited in scope and duration-a single question. Although Saadeh contends that he was not free to leave at any time, this subjective belief is not by itself the standard for Miranda warnings.

*Id.* at 520.

Finally, Magistrate Goodstein cited to *Mullikin* in his discussion of Couch's custodial status. *Mullikin* presents a substantially similar fact pattern to Couch's situation. *See Mullikin*, 2006 WL 1675185. Police officers were investigating a tip concerning a recent string of bank and motel robberies. *Id.* at 1. The informant stated that the Mullikin and his wife, Stacey Brooks, were staying at the Continental Inn in Lexington, Kentucky, and further informed the officers that there was an active warrant for Brooks. *Id.* When the officers arrived at the Continental, the hotel manager accompanied them to the room where they believed Brooks was located.

The officers testified at an evidentiary hearing that after they arrested Brooks on the warrant and placed her in handcuffs, Mullikin remained in the hotel room. Two officers stayed in the room with Mullikin, and explained that they would like to speak to him regarding robberies that had occurred in Lexington. *Id.* When the officers asked Mullikin if he knew why they were there, he responded that he would be going to the federal penitentiary and that he had been all over the news. *Id.* After that response, Mullikin was placed under arrest. The court determined that Mullikin was not in custody for the purposes of *Miranda*. *See id* at 6-7. The court noted that he was not handcuffed; no force was used to keep Mullikin in the hotel room; and that the questioning was brief in reaching this conclusion. *Id.* at 7. The court further noted that the "fact that the questioning occurred in a motel room, like a home, is much less coercive an environment that a police station and courts have often held that suspects were not in custody in similar situations." *Id.* (internal citations omitted).

The court concurs with Magistrate Goodstein's analysis that these cases are relevant and helpful in applying the law to the facts in Couch's case. However, the court takes exception to the magistrate's conclusion that the custodial status of Couch was different from the defendants in *Burns*, *Saadeh*, and *Mullikin*. It is important to note that in each instance, the court found it significant that the defendants were not handcuffed or restrained in anyway, and that the length of the questioning was very brief. These are precisely the factors present in Couch's case: she was not handcuffed, restrained, nor told she could not leave; furthermore,

-9-
Case 2:07-cr-00181-JPS    Filed 01/28/08    Page 9 of 13    Document 127

Glidewell testified that length of the questioning was at most two minutes. Additionally, like the defendant in Saadeh, Couch was not a target for the investigation of the Harvester drug conspiracy. Logic dictates that each of these similarly situated defendants would have a similar result: a finding that the defendant is not in custody for *Miranda* purposes.

At the same time, the court respectfully disagrees with the magistrate's determination that certain factors distinguish the result in Couch's case from the holdings in *Burns*, *Saadeh*, and *Mullikin*. For example, Magistrate Goodstein found "the size of the room to be significant in the custody calculus." (Recommendation 13.) However, Seventh Circuit case law suggests that small rooms and close proximity of officers may be insufficient indicators that a custodial interrogation occurred. *See Thompson*, 496 at 811 (noting that while a room was small and the defendant had to sit very close to the officers, "the close proximity of the agents alone, in these circumstances, is insufficient to render a suspect 'in custody'"). Furthermore, the court also does not believe the fact that because Couch was seated on the bed and Glidewell was standing ought lead to a conclusion that their conversation was coercive in nature. Glidewell was talking to Couch as he found her; she was not directed to sit nor even directed to remain where she was. Magistrate Goodstein additionally found that the number of officers present to apprehend Harvester should be considered in the custodial determination. However, the court finds it more appropriate to focus on the facts at the time of Couch's actually questioning – when no weapons were drawn and only Glidewell was

-10-

Case 2:07-cr-00181-JPS   Filed 01/28/08   Page 10 of 13   Document 127

questioning her; the fact that several officers had their weapons drawn early when arresting Harvester is somewhat irrelevant in regards to the police control over Couch personally.

Equally important, the court does not believe the nature of the questioning should be considered in determining whether or not Couch was in custody. This is not a consideration relevant to a determination as to whether or not an individual is in custody for *Miranda* purposes. Specifically, the Supreme Court has determined that an officer's belief about the nature of an interrogation, or his understanding about the potential culpability of the individual being questioned, may be one factor among many that impact the assessment as to whether that individual was in custody, "but only if the officer's views or beliefs were somehow manifested to the individual under interrogation and would have affected how a reasonable person in that position would perceive his or her freedom to leave." *Stansbury v. California*, 511 U.S. 318, 325 (1994). Glidewell testified that they initially did not even know who Couch was or if she had any involvement in the conspiracy at all. He further stated that he was not even focused on eliciting incriminating information from Couch during his conservation with her.

Magistrate Goodstein also noted that Glidewell's testimony that Couch was not free to leave corroborates a finding that she was in custody. However, this court finds that consistent with Supreme Court precedent, it is inappropriate to consider the subjective beliefs of the questioning officers. Indeed, the Court in *Stansbury* stated that the "in custody" determination depends upon the objective circumstances

of the interrogation, and not the subjective views of the interrogating officers or the individuals being questioned. *Id.* at 1529.

Moreover, when the court applies the relevant considerations as defined by this circuit, it is readily apparent that Couch was not in custody for the purposes of *Miranda*. The Seventh Circuit has set forth several factors a court must consider when determining if a defendant is in custody. In an objective review of the facts, the court should consider: (1) whether the questioning took place in public; (2) whether the defendant consented to speak with the officers; (3) whether the officers informed the defendant that she was not under arrest and was free to leave; (4) whether the defendant was moved to another area; (5) whether there was a threatening presence of several officers or a display of weapons and physical force; (6) whether the officers deprived the defendant of any documents she needed; and (7) whether the officers' tone of voice was such that their requests would likely be obeyed. *United States v. Barker*, 467 F.3d 625, 628-29 (7th Cir. 2006) (citing *United States v. Wyatt*, 179 F.3d 532, 535 (7th Cir. 1999)).

In Couch's case, several factors weigh against a finding that she was in custody. She consented to speak with the officers; Glidewell did not tell her that she was under arrest or not free to leave; she was not moved from one location to another; she was not deprived of necessary documents; there were no drawn weapons or other displays of physical force; and Glidewell testified that his conversation with her was non-threatening. The Seventh Circuit's delineated factors are *not* present in Couch's case, and under an objective review of the totality of the

-12-

Case 2:07-cr-00181-JPS    Filed 01/28/08    Page 12 of 13    Document 127

circumstances, this court finds that Couch was not in custody for *Miranda* purposes. The "essential element of custodial interrogation is coercion," and the court finds that due to the lack of coercion, the questioning of Couch was non-custodial. *See Salyers*, 160 F.3d at 1159 (finding that a defendant was not in custody when he was not told he could not leave, not placed in any type of restraint, and no forces of authority were demonstrated).

Accordingly,

**IT IS ORDERED** that Janson Johnson's motion for disclosure of certain government informants [Docket #94] be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Amita Couch's motion to sever [Docket #95] be and same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Amita Couch's motion for disclosure of certain government informants [Docket #96] be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that Amita Couch's motion to suppress statements [Docket #97] be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 28th day of January, 2008.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge